IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-2771

DAVID ULERY,

    Plaintiff,

v.

MAVERICK LEADS, LLC and CHRISTOPHER WOLFE,

    Defendants.

### CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Defendants Maverick Leads, LLC ("Maverick") and Christopher Wolfe ("Wolfe") have contributed to this barrage of telephone spam by initiating illegal calls to Plaintiff David Ulery ("Ulery") and many others like Ulery.

3. Ulery's legal counsel also has other clients who have received unsolicited and unwanted telephone spam from Defendants.

4. Ulery and many others want this telephone spam to stop.

5. Ulery brings this action individually, and on behalf of putative class members, to seek injunctive relief and damages.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

8. Plaintiff David Ulery is a resident of Colorado Springs, Colorado.

9. Defendant Maverick Leads, LLC is a Limited Liability Company with its principal place of business in Huntsville, Alabama.

10. Defendant Christopher Wolfe is a resident of Spanish Fort, Alabama.

11. Wolfe is the owner and managing member of Maverick.

## FACTUAL ALLEGATIONS

12. Ulery's home, phone, and privacy have been invaded by Maverick's non-emergency calls.

13. Ulery is the residential subscriber of the cell phone number 719-271-7000. Ulery uses this phone number at home. Ulery makes and takes personal calls and text messages on this phone number.

14. Ulery registered the number 719-271-7000 on the national Do Not Call Registry ("DNCR") on February 6, 2008.

15. Maverick has initiated calls to Ulery at least five times, including the following:

   i. Call from 970-500-6836 on Mar 6, 2023 at 6:03pm UTC
   ii. Call from 719-294-8669 on Mar 6, 2023 at 6:06pm UTC
   iii. Call from 719-665-2658 on Mar 6, 2023 at 6:07pm UTC
   iv. Call from 720-817-5395 on Mar 13, 2023 at 5:58pm UTC
   v. Call from 970-525-5469 on Mar 14, 2023 at 4:32pm UTC

16. When calling back each of these numbers, a prerecorded message played saying the calls were from Maverick.

17. On March 6, 2023, Ulery called back the 719-294-8669 number. A prerecorded message played that said the call was from Maverick about an insurance quote. The recording then said that because of a technical issue no rep was available to talk but that he could opt out by calling 254-274-7555 or by pressing one. Ulery tried calling 254-274-7555 but it was a non-working number. So Ulery called the 719-294-8669 number again and pressed one to opt out. The recording said Ulery would be opted-out within 48 hours.

18. However, this was not true. Ulery continued to receive calls from Maverick as late as March 14, 2023, more than 10 days after Ulery told Maverick to stop.

19. It is unreasonable to take 10 days to honor a consumer's stop request.

20. On information and belief, there are additional calls Maverick has made to Ulery beyond March 14, 2023, but which Ulery is unaware because Maverick does not generally leave a voicemail when calling.

21. The only voicemail Maverick left was on March 6, 2023, from 719-294-8669.

22. The voicemail Maverick left first had silence, then a beep or popping sound indicating an agent had just connected to the call, and then the words, "Hello. (Pause). Hello."

23. Clearly Defendants made these calls using a system that automatically dialed phone numbers and then only connected the call to an agent once the system detected that somebody had answered. Otherwise, the agent would not have left a voicemail that said "Hello. (Pause). Hello." This is something an agent says when they just got connected to a call and they think they are talking to a live consumer.

24. On information and belief, Defendants randomly or sequentially generated Ulery's phone number. This is based on the fact that (i) Ulery never provided the number 719-271-7000 to Defendants, never had a relationship with Defendants, and never gave permission

for Defendants to send any type of communication, and (ii) Ulery's legal counsel has multiple other clients who have received unwanted and unsolicited spam from Maverick.

25. Maverick is a lead generation company. Maverick sells leads to insurance agents.

26. The purpose of Maverick's calls was to sell insurance to Ulery by connecting Ulery to insurance agents who would in turn provide insurance quotes to Ulery.

27. Just a month ago, on September 13, 2023, articles of dissolution were filed with the Alabama Secretary of State to dissolve Maverick Leads, LLC. The articles of dissolution were filed by "Christopher P Wolfe" in his capacity as "President" of the LLC.

28. The reason for dissolution stated in the articles was "Business purposes of LLC is completed."

29. However, this seems inaccurate and not the actual reason the LLC was dissolved.

30. Maverick continues to operate until today, but they are doing so under a new name.

31. Maverick's old LinkedIn was www.linkedin.com/company/maverick-leads.

32. As of October 23, 2023, if you visit www.linkedin.com/company/maverick-leads, the page will immediately redirect to www.linkedin.com/company/usetitandata.

33. The page www.linkedin.com/company/usetitandata has a new company name of "Titan Data Solutions."

34. Wolfe is listed as the General Manager of Titan Data Solutions on LinkedIn.

35. "Titan Data Solutions" is not an incorporated or registered entity in any of the 50 U.S. states or D.C.

36. Thus, Wolfe is the manager, president, and owner of Maverick, which is now doing business using the unincorporated and unregistered alias of Titan Data Solutions.

37. There are multiple tell-tale signs that Wolfe knows Maverick has engaged, and continues to engage, in illegal telephone spamming:

38. First, just last year an insurance agency was sued for TCPA telephone spam violations wherein Maverick was the lead generator that placed the offending calls. See *Almanza III v. Daniel Akin Insurance Agency LLC*, No. 3:22-cv-00329-RFC, Dkt #25 (W.D. Tex 2023).

39. Second, Wolfe recently updated his LinkedIn profile to remove his last name. His name on LinkedIn is now only "Chris W." And he has no profile picture. These are things he is doing to hide his identity and his association with Maverick.

40. Third, Wolfe dissolved Maverick but is now operating under a company name that is unregistered and unincorporated.

41. Thus, Wolfe knows Maverick is engaged in illegal telephone spamming, he is continuing to authorize, oversee, and direct the telephone spamming, and he is taking steps to conceal and cover their tracks.

42. Maverick's calls are a nuisance and annoyance to Ulery. The calls have invaded Ulery's privacy. The spam has diminished the value of Ulery's phone and Ulery's enjoyment of life.

## LEGAL STANDARD

43. **Do Not Call Requests**. Before initiating calls, telemarketers must have a written policy relating to an internal do-not-call list and must honor do-not-call requests. 47 C.F.R. § 64.1200(d).

44. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

45. **Automatic Telephone Dialing System**. The TCPA prohibits calls to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. §64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

46. **Personal Liability**. Individuals may be personally liable for TCPA violations when the individual "actually committed the conduct that violated the TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

## CLASS ACTION ALLEGATIONS

47. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Ulery brings this action on behalf of all other persons similarly situated throughout the United States.

48. Ulery proposes the following Classes:

> If need to exclude customers because of consent or arbitration issues, add the following point for (1): "who are not customers of Maverick"
>
> **The Do Not Call Class**
> All persons in the United States (1) to whom Maverick initiated more than one telemarketing call or text message within any 12-month period, (2) to their cellular telephone number, (3) after receiving a do-not-call request, (4) within the last four years from the filing of this action.
>
> **The DNCR Class**
> All people in the United States (1) to whom Maverick initiated more than one telephone solicitation within any 12-month period, (2) to their cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) within the last four years from the filing of this action.
>
> **The ATDS Class**
> All people in the United States (1) to whom Maverick initiated more than one or more call or text message to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate calls to Ulery, (3) within the last four years from the filing of this action.

49. Ulery does not know the exact number of class members but reasonably believes the number to be in the thousands, thus making joinder of all class members impracticable.

50. Class members are identifiable through phone records and phone number databases.

51. There are questions of law and fact common to Ulery and the class member including but not limited to:

   i. Whether Maverick initiated the calls.
   ii. Whether Maverick's calls violated the law.
   iii. Whether Ulery and class members are entitled to statutory damages, trebled damages, and injunctive relief.

52. Ulery's claims are typical of the claims of the class members. Ulery's claims, like the class members' claims, arise out of the same common course of conduct by Maverick and are based on the same legal and remedial theories.

53. Ulery is an adequate representative of the class because Ulery's interests do not conflict with the interests of the class members, Ulery will fairly and adequately protect the interests of the class members, and Ulery is represented by counsel skilled and experienced in class actions, including TCPA class actions.

54. Common questions of law and fact predominate over questions affecting only individual class members.

55. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the damages are statutory. Notice to class members can be provided by mail or other means. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters

illegal activities. There will be no significant difficulty in the management of this case as a class action.

56. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### FIRST CAUSE OF ACTION
### Failure to Honor Opt-Out Requests
### (On Behalf of Ulery and the Do Not Call Class)

57. Maverick violated 47 C.F.R. § 64.1200(d)(3) by initiating calls to Ulery and members of the Do Not Call Class after they asked for the calls to stop.

58. Wolfe directly controlled, authorized, and/or participated in initiating the calls and is therefore personally liable for the calls.

59. Ulery and members of the Do Not Call Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

60. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

61. The court should enjoin such violations. *Id.*

### SECOND CAUSE OF ACTION
### Illegal Solicitation of Persons on the DNCR
### (On Behalf of Ulery and the Do Not Call Class)

62. Maverick violated 47 C.F.R. § 64.1200(c)(2) by initiating calls to Ulery and members of the DNCR Class while their phone numbers were on the DNCR.

63. Wolfe directly controlled, authorized, and/or participated in initiating the calls and is therefore personally liable for the calls.

64. Ulery and members of the DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

65. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

66. The court should enjoin such violations. *Id.*

## THIRD CAUSE OF ACTION
### Illegal Use of an Automatic Telephone Dialing System
### (On Behalf of Ulery and the Failure to Identify Class)

67. Maverick violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Ulery and members of the ATDS Class.

68. Wolfe directly controlled, authorized, and/or participated in initiating the calls and is therefore personally liable for the calls.

69. Ulery and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

70. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

71. The court should enjoin such violations. *Id.*

## RELIEF REQUESTED

Ulery respectfully requests the Court grant the following relief:

A. Certification of the proposed Classes;

B. Appointment of Ulery as class representative;

C. Appointment of the undersigned as lead counsel for the Classes;

D. Injunctive relief as set forth above;

E. An award of damages to Ulery and class members, as allowed by law;

F. An award of fees, costs, and interest, as allowed by law; and

G. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Ulery requests a jury trial as to all claims of the Complaint so triable.

DATED October 23, 2023

Respectfully submitted,

<u>*/s/ James Wertheim*</u>
James Wertheim
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
jim@lawhq.com

*Lead Attorney for Plaintiff*